LAWSON, J.,
concurring specially.
The majority opinion applies the law in this area as well as any jurist could. I write separately to point out what is probably already obvious — that the “standard” set forth by our Supreme Court to judge how the statute of limitations applies to a flooding claim is far too vague, amorphous and unworkable, and leads to absurd results.
In this case, the non-governmental Defendants own homes adjacent to Plaintiffs property, in a subdivision that was constructed sometime prior to 1995. The City approved plans for development of the subdivision in which the non-governmental Defendants now live, again prior to 1995. The City also owns and maintains the surface street adjacent to Plaintiffs property. All changes to this land which Plaintiff alleges to be the cause of flooding on her property are permanent, and were made prior to 1995.[1]
It is also undisputed that since at least 1995, Plaintiffs property has flooded with virtually every rainfall. This is a condition which has caused repeated, severe damage to Plaintiffs real property, as well as to structures, fixtures and personal property located on the land, and about which Plaintiff has been complaining since well before 1995. Given these facts, it seems to me that the statute of limitations should have started running by at least 1995, under any reasonable test. Under our current test, however, the injury to Plaintiffs land is not considered to be “permanent,” mainly because the flooding is potentially “abatable.” In my view, adding abatability to the test for permanency renders the statute of limitations completely illusory in all recurrent flooding cases — because an engineering fix can probably be designed to correct any recurring flooding problem.
As a start, therefore, I believe that the standard for determining when the statute of limitations begins to run in a flooding case should be stripped of any consideration of whether the flooding is “abatable.” Instead, “abatability” should be considered only in connection with damages. For example, if recurring flooding decreases the value of a plaintiffs property by $200,000, but the flooding could be completely abated with an engineering fix costing *447 $100,000, then the abatement cost would be the appropriate measure of damages. Alternatively, a defendant might claim failure to mitigate damages as an affirmative defense. If it turns out that a plaintiff could have abated the flooding problem for only $10,000, he or she should not be able to sit back and allow the flooding to repeatedly damage structures on the property, and then claim $200,000 for repair costs that could have been avoided by spending $10,000 to abate the problem. Obviously, it makes sense to consider abatement and abatement costs in these contexts, when considering damages.
But, again, a rule under which no flooding condition is “permanent” for statute of limitations purposes if it can be “abated” unfairly allows the plaintiff to rest on his or her rights for years, as Plaintiff has done in this case, and then seek redress when damages are presumably much greater than they would have been had the problem been timely corrected. This defies common sense.

. None of the non-governmental Defendants owned their property when it was first developed. At that time, it is alleged, the developer and/or prior owner(s) brought in fill to raise the elevation of the property in connection with development of the subdivision. The non-governmental Defendants purchased their homes later, after the permanent changes were made to the land which Plaintiff now alleges to be the cause of flooding on her property.